[Crim. No. 1051. Third Appellate District.—September 25, 1928.]

THE PEOPLE, Respondent, v. JAMES RODGERS, Appellant.

H. K. Landram for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted in the superior court of Merced County of the crime of burglary of the second degree. (Pen. Code, sec. 460, subd. 2.) The appeals here presented by him are from the judgment of conviction and the order denying his motion for a new trial. The only point urged by the defendant for a reversal is that the verdict is not supported by any evidence introduced by the People, in that there is no evidence tending to connect him with the commission of the crime except the uncorroborated testimony of an accomplice.

The crime charged in the information was committed "on or about" Saturday, the twenty-first day of April, 1928,

in the town of Dos Palos, in Merced County, at some time between, approximately, the hour of 8 P. M. of the day named and the early morning of the following day, which, of course, was Sunday. The building entered was occupied by a general merchandise store of which one E. T. Stewart was the owner.

It appears from the testimony of said Stewart that, either on Saturday, the 21st of April, or the preceding day (Friday) and prior to the usual time for closing the store for the day, the defendant, accompanied by a boy of the age of fifteen years, as the latter testified was his age, and who gave his name as William Martin, entered the Stewart store, looked about for a brief time, then made a small purchase of candy and thereupon left the store. On the evening of the 21st of April, near the hour of 8 o'clock, Stewart, after taking the money which had accumulated in the till from the day's sales transferred it to his safe, locked and barred the doors and windows of the store and went to his home. Between half-past 6 and 7 the following morning (Sunday) Stewart returned to the store, and, before entering it, noticed that one of the panes of glass in the front door had been removed. He stepped into the store and upon an investigation discovered that a miscellaneous quantity of merchandise (shoes, cigarettes, watches, pocket knives, postage stamps, gloves and also some pennies which he had left in the till) had been stolen and taken from the store. The witness found on the outside of the store near the back window one of a pair of gloves which had been taken with the other articles mentioned. Later, the witness testified, the mate to the glove was delivered to him. Immediately after discovering that his store had been robbed, Stewart telephoned to John Campbell, the constable of the township, and informed him of the commission of the crime. Campbell immediately proceeded to make an investigation and finally discovered the goods underneath a warehouse in or near a corral in Dos Palos. Stewart identified the goods so found as being those that had been taken from his store on the occasion referred to. Stewart further testified that after the discovery of the stolen property and the arrest of the defendant and Martin, Constable Campbell brought the latter into the presence of the witness. Stewart stated that he asked the two men to state the truth

regarding the charge and that if they were the parties who had entered his store to say so, or words to that effect; that either the defendant or Martin (it does not appear which) asked Stewart what charge would be preferred against them, to which Stewart replied that he did not know. Stewart testified that neither defendant nor Martin would admit having committed the crime. He did not remember whether the defendant expressly denied connection with the offense. His best recollection was that the defendant would neither "admit nor confirm" the charge against him, but that "they wanted me to say just what I would do, what charge I would place, and I would not tell them what charge I would place until they came clean and tell the whole story first."

William Martin, the young man spoken of above as having been seen with the defendant previously to the commission of the crime, testified that he and the defendant committed the act. He said that on the night of April 21st, after the store had been closed (the hour not given by the witness) he and Rodgers went to the store and removed the pane of glass from the front door and thus effected an entrance; that they picked up some grass and wiped the window for the purpose of obliterating the finger-prints; that the first thing they did was to look for and secure a pair of gloves to be used for the purpose of preventing the imprint of their fingers upon any article; that they took two pairs of gloves; that they gathered the articles above mentioned, left the store by the back way, and started to leave the town; that after going a short distance from the town they observed an automobile parked on the road; that they went to the automobile and undertook to start it but failed; that while there they dropped a pair of gloves; that they then returned to Dos Palos and went to a warehouse and secreted the goods thereunder; that they thereafter went to Los Banos, a town a short distance from Dos Palos, remained there "half an hour or an hour or so" and then again went to Dos Palos. The witness did not testify at what time he returned to Dos Palos from Los Banos, but did state that they loitered about a corral near which the warehouse where they had secreted the goods was located, this warehouse being, as stated, in Dos Palos. Asked why they returned to Dos Palos at that time, Martin stated

that "we came back to get the stuff." It was while they were in the corral that they were arrested by Campbell, the constable. The witness stated that he and Rodgers were together at all of the times mentioned by him in his testimony.

Constable Campbell testified that immediately upon being apprised of the burglary he went to the store and made an investigation of the situation; that he called the sheriff's office and gave information there of the commission of the crime and that a Mr. Morse of that office went over to the store with the equipments for taking any finger-prints which might be found on any of the articles or about the windows, doors, or furniture of the establishment; that they did not find any finger-prints on any of the articles inside the store or the windows, but "we did find a pair of gloves that the party that went into the store had used. One of the gloves was just outside of the window, about halfway back from the building, from the front part of the store; that there is a little office there, and one of these gloves was found inside the office, and the other one just outside the window." He stated that the gloves just referred to were light-colored buckskin and resembled the pair of gloves that were introduced in evidence as one of the pair that had been taken from the store. He further stated that a mark on the back of one of the gloves appeared to have been made by the use of matches. "We checked up on the stuff that was missing," proceeded the constable, "and looking for the finger-prints on everything around the store, which we did not find, and then it was reported to us that Nicoletti's car had been taken out of the yard, someone was trying to get away with it, and I went over to investigate that, and we found a pair of gloves in the car." The witness was shown a pair of gloves by the district attorney and he identified them as being the pair that he found in the car. He further testified that on several occasions about three or four days before the burglary he saw the defendant and young Martin together walking about Dos Palos; that after the burglary he saw them on the evening of the 25th of April; that they were then in a cattle corral at South Dos Palos; that the corral was about 150 or 200 feet west of the warehouse underneath which the stolen goods were secreted. It was at this place that the defendant and young

Martin were placed under arrest and confined in the county jail.

The witness Buchanan, who resides about a mile outside of Dos Palos, stated that on the twenty-first day of April he saw the defendant and Martin going into Dos Palos in a machine and that he saw them get out of the car; that he also saw them together the next morning.

V. Guidi stated that he saw the defendant and Martin in South Dos Palos during the daytime of April 21st and that the next day—the day following that upon which the burglary was committed—he saw the two together in Los Banos.

W. T. White, sheriff of Merced County, testified that while the defendant was confined in the county jail that he (the sheriff) received information that ''a couple of men in jail were trying to make their escape by sawing out, and we conducted a search of the building, searched everything, and found some articles that should not have been there. . . . They consisted of a file, a pair of pliers and a pocket knife''; that they had evidently been used on the bars of one of the cells; that he called some of the prisoners in and questioned them about the matter and that the defendant, while this investigation was going on, called the sheriff and ''said he wanted to see me, and I went over there and he said, 'Don't blame these fellows for anything that is done, I brought these things (referring to the file, pliers, etc.) down from upstairs myself.' ''

The foregoing statement involves in substance a recital of all the important facts and circumstances brought out at the trial.

If there was no testimony corroborating that of the accomplice, Martin, to the effect that he entered the store and abstracted therefrom the goods above mentioned it is very clear that there would be no legal support to the verdict. But the identification by Stewart of the gloves which the accomplice stated were among the articles taken from the store by him and the defendant and left by them in the car which Martin said he and the defendant undertook to start, certainly tends to support and corroborate the testimony of Martin that he himself did participate in the commission of the crime. Indeed, the finding of the other articles under the warehouse where Martin testified that he

and the defendant secreted them is also a circumstance corroborative of the confession of the accomplice of his own participation in the commission of the crime. This being so, Martin's testimony that the defendant was also connected with the commission of the offense seems to us to be corroborated by the following facts and circumstances brought out by testimony other than that of the accomplice: 1. That on every occasion when the defendant was seen in Dos Palos and Los Banos he was in the company of Martin, the accomplice; 2. That in the daytime of either the 20th or the 21st of April, 1928, the defendant and the accomplice, in the company of each other, went into the store which was burglarized, and, after looking about the store for a brief time, purchased a small amount of candy; 3. That they were seen getting in an automobile when first they made their appearance in Dos Palos; 4. That the day after the crime was committed, they were seen together loitering about a corral, located at a point between 150 and 200 feet from the warehouse underneath which Martin testified that he and the defendant secreted the stolen property and where it was found by the constable and seen and taken to the store by Stewart; 5. The fact that he did not deny that he took part in the commission of the crime when interviewed by Stewart in the presence of Constable Campbell and when advised by Stewart that hope for lenient consideration in the matter of punishment for the offense could rest only on their confession of guilt, if they were guilty, to which suggestion the only reply offered by either (whether one or both does not appear, yet the suggestion was made to both in the presence of each other) being in an inquiry as to the nature of the charge which would probably be laid against them; 6. The circumstance referred to by Sheriff White of the attempted jail break and the defendant's admission that he took into the jail the implements with which an attempt was made to break open the jail doors, and the further statement by the defendant to the sheriff that he was alone responsible for "anything that was done" and that he should not "blame these fellows (referring to the prisoners that the sheriff was questioning regarding the attempted break) for anything that is done."

It is also to be considered that the accomplice in this case was a mere boy of about the age of fifteen years and the

jury could reasonably conclude, in considering that fact with the other circumstances to which we have just referred, that the boy would probably not have attempted to commit such a crime without the aid of someone and that person the defendant, with whom it was shown he was the constant associate and companion all the period of time that they were in the neighborhood of Dos Palos. Of course, it is to be conceded that the circumstances just narrated are not sufficient to establish the guilt of the defendant beyond a reasonable doubt and it is not necessary that they should be. And it is to be conceded that each circumstance, taken alone, would be entitled to but little consideration, but, when all are considered together, it seems to us that there can be no doubt but that the result is that they sufficiently meet the requirement of section 1111 of the Penal Code as to the *quantum* and quality of the evidence necessary to corroborate the testimony of an accomplice in order that a conviction of the accused may legally be had.

Explaining the meaning, intention, and scope of said section, the supreme court, in *People* v. *McLean,* 84 Cal. 480, 482 [24 Pac. 32], after declaring that the corroborative evidence in that case was not strong, said that, ''although more is required by way of corroboration than to raise a mere suspicion (see *People* v. *Thompson,* 50 Cal. 480), yet the corroborating evidence is sufficient if it, of itself, tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration. (*People* v. *Melvane,* 39 Cal. 616; *People* v. *Clough,* 73 Cal. 351 [15 Pac. 5].)''

The McLean case, on the question of the *quantum* of proof necessary to meet the requirement of section 1111 of the Penal Code as to the corroboration of an accomplice, has been cited in and approved by many subsequent cases of the supreme and appellate courts of this state, many of which cases are of very recent date.

We think the foregoing review of the situation in this case as it is made by the evidence plainly shows that the accused was legally convicted.

The judgment and the order appealed from are affirmed.

Plummer, J., and Finch, P. J., concurred.